UNITED STATES *v.* RITTER CARLTON CO. (No. 4387)[1]

United States Court of Customs and Patent Appeals, April 5, 1943

*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon* and *Joseph F. Donohoe*, special attorneys, of counsel), for the United States.
*Puckhafer, Rode and Rode* (*Howard C. Carter* of counsel) for appellee.

[Oral argument February 2, 1943, by Mr. Rao and Mr. Carter]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

This is an appeal by the Government from the judgment of the United States Customs Court, Second Division, sustaining the protest of the importer against the collector's classification as slip-joint pliers of certain imported articles which, on the consular invoice, were listed as "Multigrip-Wrenches."

A sample of the merchandise was placed in evidence as Exhibit 1. It consists of two metal parts, the jaw ends of which are curved, the handle portions being straight. One of the parts is shorter than the other. The handle portion of each part is about 6 inches long. The parts are attached to each other by a rivet placed near the jaw ends. Five notches, or orifices, are provided into which the rivet is slidable. So, the jaws are adjustable to five different widths between themselves. The inner surfaces of the jaws are serrated in the same manner as are those of what we may call conventional slip-joint pliers, except that the serrations in Exhibit 1 extend to the extreme ends of the jaws. The jaws cannot be brought entirely together, the space between them ranging from about a quarter of an inch to about three

[1] C. A. D. 234

inches, dependent upon the particular notch, or orifice, in which the rivet rests. When in the position where the narrowest width is present the inner surfaces of the jaws appear to be substantially parallel but they do not touch at any point. The articles are evidently designed to grasp nuts, bolts, pipe, and the like, but they seem to be better adapted for use as a wrench than are conventional slip-joint pliers.

The collector classified the articles as "slip joint pliers," and assessed duty at the rate of 60 per centum ad valorem under paragraph 361 of the Tariff Act of 1930, which reads in part:

PAR. 361. Slip joint pliers, 60 per centum ad valorem; other pliers, pincers, and nippers, and hinged hand tools for holding and splicing wire, finished or unfinished, valued at not more than $2 per dozen, 5 cents each and 60 per centum ad valorem; valued at more than $2 per dozen, 10 cents each and 60 per centum ad valorem: * *. *  .

The claim of the importer which the trial court sustained is for classification and duty assessment as "wrenches," under paragraph 396 of the act, which reads:

PAR. 396. Drills (including breast drills), bits, gimlets, gimlet-bits, countersinks, planes, chisels, gouges, and other cutting tools; pipe tools, *wrenches*, spanners, screw drivers, bit braces, vises, and hammers; calipers, rules, and micrometers; all the foregoing, if hand tools not provided for in paragraph 352, and parts thereof, wholly or in chief value of metal, not specially provided for. 45 per centum ad valorem. (Italics supplied.)

Both parties introduced testimony and numerous physical and documentary exhibits were placed in evidence, but no effort was made to establish a commercial designation for the terms "pliers" and "wrenches" different from the common meaning of such terms.

Among the physical exhibits placed in evidence were Illustrative Exhibit D, described as "long-nose pincers," the jaws not being adjustable, and Illustrative Exhibits E and L, the two latter being curved-handle pliers, the jaws of which, by reason of the slip joints, can be adjusted to two positions in both of which the jaws come together. Other physical exhibits consisted of bolts, pipe, rods, watch parts, and wire used in demonstrating the operation of the different pincers and pliers during the taking of the testimony. No physical exhibits illustrative of conventional types of wrenches were introduced in evidence. A catalog of the importer showing articles like the merchandise at bar, together with orders received by importer for such merchandise, and invoices of it by the seller to purchasers constitute the documentary exhibits introduced on importer's behalf. From such documentary exhibits it appears that the importer advertised, sold, and invoiced articles of the kind here involved as "Multigrip Wrenches."

We understand it to be conceded, so far as it concerns this case, that Illustrative Exhibits E and L above alluded to represent types of

pliers which are classifiable as slip-joint pliers under the first clause of paragraph 361, *supra*, and that articles like Illustrative Exhibit D are classifiable under the second part of the paragraph as pincers, or hinged-hand tools.

Two witnesses testified—Mr. H. F. Ritter (called by the importer) who stated that at the time (1938) of the importation of the merchandise at issue, he was "managing partner" of the importer, and Mr. William H. Hall (called by the Government) who stated that he was assistant sales manager of a company engaged in the manufacture of pliers, chisels, wrenches, etc.

In its decision the trial court, after giving a resumé of the evidence, quoted definitions of the terms "plier," "pincers," and "wrench" from several standard lexicographies. The definitions given in all the authorities are substantially the same and we deem it sufficient to quote those given in Webster's New International Dictionary, 1929 and 1933 editions, and Knight's Mechanical Dictionary.

The quotation from Webster's Dictionary is as follows:

*plier* 2. pl. A kind of small pinchers with long jaws, used for bending or cutting metal rods or wire, for handling small objects, etc.

*pincers* 1. An instrument having two handles and two grasping jaws working on a pivot, used for gripping things;

*wrench* 5. An instrument, often a simple bar or lever with jaws or an angular orifice either at the end or between the ends, for exerting a twisting strain, as in turning bolts, nuts, screw taps, etc.

In Vol. 11, page 1742, of Knight's Mechanical Dictionary the term "pliers" is defined as follows:

*pliers.* A small pair of pinchers with long jaws, adapted to handle small articles, such as the parts of a watch or other fine machinery. It is also specially adapted for bending and shaping wire.

This authority further states (and this was not quoted in the decision of the trial court):

Pliers with peculiarly shaped or proportioned jaws are called *long-nosed* pliers, *round-nosed* pliers, *cutting*-pliers, etc.

A number of different types are illustrated in the volume, and it may be said that there is no illustration under the designation of "pliers" of any article having the contour or shape of those here involved.

The same authority (vol. III, page 2821,) defines the term "wrench" (so far as here pertinent) as follows:

*wrench.* A bar having jaws adapted to catch upon the head of a bolt or upon a nut to turn it, or to hold the latter from turning in some cases when the bolt is being rotated.

Some wrenches have a variety of jaws to suit different sizes of nuts and bolts.

\*    \*    \*    \*    \*    \*    \*

In the self-adjusting wrenches and pipe-tongs (Fig. 7369), the curved inner faces of the jaws are serrated; various sizes of pipes may be firmly grasped by

opening the jaws to a greater or less extent and inserting the pipe to a proper distance within the opening, one hand being employed to compress the handle of the movable jaw, and the other to operate that of the fixed jaw, which acts as a lever when the implement is used as a wrench.

Various types of wrenches are illustrated and the trial court directed particular attention to the illustration of a "Pipe-Wrench," appearing on page 2821, saying:

The illustration * * *, figure 7369, shows an article very much like said exhibit 1. The similarity of design and construction is most pronounced if the jaws of exhibit 1 are opened slightly and it is placed on the adjoining page to figure 7369. The use and operation of said exhibit 1 on pipe, as demonstrated and described by the witness Ritter is identical with the description of the use and operation given of the wrench so depicted.

The illustration so alluded to shows an article having two parts, the handle of the part which carries the lower jaw being straight, while that of the one which carries the upper jaw is curved and is only about half the length of the other. No slip joint is shown in the illustration.

It will be observed that in both of the authorities from which we quote the term "pliers" is defined substantially as a small pair of pinchers, and this is true of all the other authorities examined. Also, it will be observed that paragraph 361, *supra*, distinguishes between "slip joint pliers" and "other pliers," and that in the second part of the paragraph the terms "pliers" and "pincers" are both used.

As has been stated, no effort was made to prove any commercial designation different from the common meaning of the statutory terms involved in the controversy, and the testimony in the case related, so far as definitions are concerned, to what the respective witnesses regarded as their common meaning. There was some testimony respecting use, and certain demonstrations relating to use were made in the presence of the trial court.

Mr. Hall, the Government's witness, referred to Exhibit 1 throughout his testimony as "pliers," and said concerning it "Nothing of this type is made in this country." A catalog of his company was introduced in evidence as Exhibit M, and his attention was directed to an illustration (1943) of an article designated in the catalog as "water pump pliers," it having one straight and one curved handle and four slip-joint adjustments, the jaws being capable of being completely closed together. It is not claimed to be similar to Exhibit 1. Another item in which straight handles are shown, also described as "water pump pliers" in Exhibit M, was stated by the witness to be "a discontinued item," it having proven unsatisfactory for the purpose for which designed. A third item (No. 743) described as "ignition pliers" is shown. The catalog states that it is "Designed to replace 10 or 12 piece sets of ignition wrenches. For use on distributor, generator, magneto, and dash panel connections, and any small nut." It is 4½

inches in length and the handles are straight; so, apparently, the jaws cannot be brought together. Mr. Hall stated that except for size the item is similar in all material respects to Exhibit 1. So far as we can determine from the illustration the jaws appear to be adjustable to only two positions, but, whether or not this be true, we do not regard that matter as particularly material.

In view of our conclusion, we do not deem it necessary to review Mr. Ritter's testimony at length. He made certain demonstrations of the manner in which the articles involved and the other illustrative exhibits are, or may be, used, and stated his reasons for contending that exhibit 1 is a wrench in the sense of paragraph 396 rather than slip-joint pliers in the sense of the first clause of paragraph 361. The opinion evidence, of course, is not binding upon the courts, and it may be added that the names of articles as given in the invoices, catalogs, etc., are not conclusive as to what such articles are in a tariff sense.

After quoting the definitions, the trial court said:

Applying the foregoing definitions, together with the testimony herein, to exhibit 1 it will be seen that said exhibit 1 is not a plier because—

1. It is not a small long-jawed pincers.

2. The jaws cannot be firmly closed and held together (except when grasping an object larger than $\frac{1}{4}''$ in cross-section).

3. It is not adapted to handle or manipulate small articles such as parts of a watch.

4. It is not adapted for bending, shaping, or cutting wire.

5. It cannot be used for bending or cutting metal rods.

6. The surfaces of the jaws are not parallel.

On the other hand, said exhibit 1 is a wrench because—

1. It is a tool for twisting or turning bolts, nut, pipe, etc.

2. It is a tool for exerting a twisting strain.

3. The jaws are adapted to catch upon the head of a bolt or nut.

4. The jaws are adapted to hold a metal pipe or rod, so as to turn it or prevent turning.

5. It has an adjustable inner jaw.

Except as to its negative finding numbered 6, we are of the opinion that upon the record before us the court's factual statements are correct. As has been stated, there is one position in which the inner surfaces of Exhibit 1 seem to be substantially parallel, but this does not affect our conclusion as to its proper classification for tariff purposes.

The Government's assignment of error No. 6 reads:

6. In not finding and holding that the distinction between pliers and wrenches is as was testified by the witness Hall in the following language quoted in the opinion:

A. The pliers is a tool made of two halves, as we term it. There are different types. There is the slip joint pliers which this happens to be and makes an adjustable jaw, but it has the two handles and requires pressure by the hand on the handles to get the grip; whereas a wrench is usually a solid type either open end or the monkey wrench type which has a screw arrangement, but always has one handle.

As was stated in the quotation above made from the decision of the trial court, one of the illustrations of a pipe-wrench given in Knight's Mechanical Dictionary (Fig. 7369) shows an article having two handles which greatly resembles the articles here involved, and we do not think that the presence of two handles should be held to prevent their classification as wrenches. As has been indicated above, the article (No. 743 in Exhibit M) manufactured by Mr. Hall's company which most nearly resembles Exhibit 1, while listed in the catalog as "ignition pliers," is advertised therein as being designed to replace 10 or 12 sets of ignition *wrenches*.

We think it clear that, if tested by the matter of use, Exhibit 1 partakes of a "wrench" character, rather than a "pliers" character.

In the brief filed on behalf of the Government before us, the matter of "legislative history" is presented, it being said:

The legislative history indicates a clear congressional intent to provide in paragraph 361 for pliers like the imported article.

This matter was also referred to in the course of the oral argument before us.

So far as the record shows, no allusion to legislative history was ever made before, or by, the trial court.

We have carefully examined the matter as set forth in the Government's brief and find nothing which would justify a conclusion different from that reached by the trial court.

The judgment appealed from is *affirmed*.